UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LATISHA M. HONER-ANTHONY,

               Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

**DECISION AND ORDER**

1:17-CV-00217 EAW



## INTRODUCTION

Represented by counsel, Plaintiff Latisha M. Honer-Anthony ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Acting Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings (Dkt. 12; Dkt. 14) pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion (Dkt. 12) is granted in part, the Commissioner's motion (Dkt. 14) is denied, and this case is remanded to the Commissioner for further administrative proceedings.

## BACKGROUND

Plaintiff protectively filed an application for DIB on July 8, 2013, with the Social Security Administration (the "SSA"), alleging disability as of May 31, 2012. (Dkt. 5 at 77,

- 1 -

132-33).[1] Plaintiff's application was initially denied. (*Id.* at 87-92). At Plaintiff's request, administrative law judge ("ALJ") Stephen Cordovani held a hearing on June 17, 2015. (*Id.* at 32-76). On September 23, 2015, the ALJ issued an unfavorable decision. (*Id.* at 14-31). The Appeals Council denied Plaintiff's request for review on January 6, 2017, rendering the ALJ's determination the final decision of the Commissioner. (*Id.* at 1-6). This action followed.

## **LEGAL STANDARD**

### I. **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also Wagner v. Sec'y of Health & Human Servs.*, 906

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. <u>Disability Determination</u>

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations from the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If the claimant cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2017. (Dkt. 5 at 23).

At step one of the five-step sequential evaluation, the ALJ deferred. (*Id.*). The ALJ explained that although Plaintiff worked after the alleged onset date, she argued that the work activity after that date should be considered a trial work period, as she worked for less than three months. (*Id.*). Because the ALJ found Plaintiff not disabled at a later step in the sequential process, he concluded that Plaintiff's work activity was a moot issue. (*Id.*).

The ALJ moved on to step two and found that Plaintiff had the following severe impairments: generalized anxiety disorder and major depressive disorder. (*Id.* at 24; 20 CFR § 404.1520(c)). The ALJ concluded that those impairments resulted in more than minimal limitations in Plaintiff's ability to perform basic work activities and were therefore considered severe. (*Id.*). However, at step three, the ALJ concluded that those impairments, alone or in combination, did not meet or medically equal any listed impairment. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following additional nonexertional limitations: she is limited to a low-stress work environment; can understand, remember, and carry out simple instructions and tasks; is limited to jobs with no supervisory duties, no independent decision-making, no strict production quotas, and only minimal changes in routine-process; and is able to tolerate up to frequent interaction with supervisors and occasional interaction with co-workers and the general public. (*Id.* at 25).

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as an electrician. (*Id.* at 30). Then, at step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including janitor, motel/hotel housekeeper, and kitchen helper. (*Id.* at 31). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

II. <u>**Analysis**</u>

Plaintiff argues that reversal is required because the ALJ erred in two ways: (1) in failing to articulate good reasons for rejecting the opinion of Plaintiff's treating psychiatrist, under 20 C.F.R. § 404.1527; and (2) in selectively rejecting the favorable portion of the state psychiatrist's opinion. (Dkt. 12-1 at 11, 16).

A. **Treating Physician Rule**

Plaintiff's first argument is that the ALJ gave little weight to the opinion of Plaintiff's treating physician, Dr. Panahon, but did not provide adequate reasons for doing so. (*Id.* at 11). The Court has reviewed the ALJ's decision and, for the reasons that follow, concludes that the ALJ erred in failing to properly apply the treating physician rule.

The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citing 20 C.F.R. § 404.1527); 20 C.F.R. § 416.927.[2] Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). While an ALJ may discount a treating physician's opinion if it does not

---

[2] The treating physician rule applies to claims filed before March 27, 2017. 20 C.F.R. § 404.1527. The current version of the SSA's regulations eliminate the treating physician rule, but those regulations apply to cases filed on or after March 27, 2017. 20 C.F.R. § 404.1520c.

meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Even when a treating physician's opinion is not given "controlling" weight, the ALJ must still consider several factors in determining how much weight it should receive. The ALJ must consider:

> the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues.

*Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (internal quotation marks, alterations, and citations omitted); 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The ALJ has a "particularly important" duty to develop the record when obtaining information from a claimant's treating physician. *Serianni v. Astrue*, No. 607-CV-250 (NAM), 2010 WL 786305, at *7 (N.D.N.Y. Mar. 1, 2010). There is ample case law suggesting that an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician in order to afford the claimant a full and fair hearing. *Id.* (quoting *Devora v. Barnhard*, 205 F. Supp. 2d 164, 172 (S.D.N.Y 2002) (collecting cases)). This obligation includes obtaining the treating physician's assessment of the plaintiff's functional capacity. *Id.*; 20 C.F.R. § 404.1512(e).

The record in this case contains a clinical summary (Dkt. 5 at 389-93), a clinical evaluation (*id.* at 291-94), and roughly 50 pages of treatment notes (*id.* at 261-77, 370-84, 399-402, 423-26) from Plaintiff's treating psychiatrist, Dr. Panahon. The ALJ assigned "little weight" to some of Dr. Panahon's findings, and "partial weight" to others. (*Id.* at 29). The Court concludes that the ALJ's reasons for discounting Dr. Panahon's findings are not "good reasons."

In October 2013, Dr. Panahon prepared a Mental Impairment Questionnaire regarding Plaintiff. (*Id.* at 291-94). She noted diagnoses of major depression and generalized anxiety disorder, among other things, and assigned Plaintiff a global assessment of functioning ("GAF") score of 55.[3] Dr. Panahon indicated that Plaintiff's symptoms included anhedonia, appetite disturbance, decreased energy, blunt, flat, or inappropriate affect, feelings of guilt or worthlessness, generalized persistent anxiety, difficult thinking or concentrating, personality change, emotional withdrawal or isolation, unstable interpersonal relationships, motor tension, emotional lability, distractibility, hyperactivity, and sleep disturbance, among other things. (*Id.* at 292).

Dr. Panahon found that Plaintiff had moderate difficulty maintaining social functioning, marked difficulty maintaining concentration, persistence, or pace, and two

---

[3] The GAF is a scale "promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" *Kohler v. Astrue*, 546 F.3d 260, 262 n.1 (2d Cir.2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, at 32 (4th ed. 2000)). The SSA has limited use of GAF scores, and ALJs are instructed to treat those scores as opinion evidence. *Mainella v. Colvin*, No. 13-CV-2453, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014).

episodes of decompensation within a twelve-month period. (*Id.* at 293). The ALJ assigned "partial weight" to those findings, stating that "in light of [Plaintiff's] generally intact memory, organized thoughts and orientation, [Plaintiff's] distractibility would only result in moderate difficulty maintaining concentration, persistence or pace." (*Id.* at 29). Dr. Panahon also noted that Plaintiff's impairments would likely cause her to be absent from work about four days per month. (*Id.* at 294). The ALJ assigned that finding "[l]ittle weight," concluding that Dr. Panahon's opinion regarding work absences was

> unsupported, vague and inconsistent with [Plaintiff's] treatment records (which reflect an improvement in her functioning over time) and her extensive work activities (such as returning to work for 6 different employers since the alleged onset date, with her being capable of performing the duties of these jobs and leaving due to reasons unrelated to [Plaintiff's] impairments).

(*Id.* at 29).

In June 2015, Dr. Panahon prepared a treatment summary. (*Id.* at 389-94). She stated that Plaintiff was unable to maintain her premorbid level of functioning due to her depression and stressors. (*Id.*). The ALJ assigned "little weight" to that finding, calling it "vague and conclusory" and stating that Dr. Panahon "fails to set forth a function-by-function analysis of the claimant's limitations." (*Id.* at 29).

The Court concludes that the ALJ failed to properly apply the treating physician rule. The ALJ assigned Dr. Panahon's opinions less than controlling weight but did not give good reasons for discounting her opinions. First, the ALJ discounted Dr. Panahon's conclusion that Plaintiff had marked difficulty maintaining concentration, stating that "in light of [Plaintiff's] generally intact memory, organized thoughts and orientation,

[Plaintiff's] distractibility would only result in moderate difficulty maintaining concentration, persistence or pace." (*Id.* at 29). The ALJ did not base that conclusion on conflicting evidence in the record, but rather substituted his own lay opinion for that of Dr. Panahon. An ALJ cannot substitute his own lay opinion in place of established acceptable medical authorities or treating sources. *Morseman v. Astrue*, 571 F. Supp. 2d 390, 397 (W.D.N.Y. 2008).

Next, the ALJ's reasons for disregarding Dr. Panahon's conclusion that Plaintiff's impairments would cause her to be absent from work approximately four days per month are not supported in the record. The ALJ dismissed Dr. Panahon's opinion as "unsupported, vague, and inconsistent" with the record, which reflects improvement in functioning over time and extensive work activities since the alleged onset date. Plaintiff's work activities and improved functioning do not directly contradict Dr. Panahon's assessment that Plaintiff would likely miss four days of work per month. Thus, the ALJ failed to provide adequate reasons for rejecting Dr. Panahon's opinion.

Finally, the ALJ assigned "little weight" to Dr. Panahon's finding that Plaintiff could not return to her premorbid level of functioning, calling it "vague and conclusory" and stating that Dr. Panahon "fails to set forth a function-by-function analysis of the claimant's limitations." (*Id.* at 29). The ALJ had an affirmative duty to seek a further functional analysis, if he considered that necessary. *Serianni*, 2010 WL 786305, at *8. His failure to seek that information was error.

For the foregoing reasons, the Court finds that the ALJ committed reversible error in failing to properly apply the treating physician rule. Accordingly, the Court finds that

the Commissioner's final determination must be reversed and remanded for further proceedings.

B. **RFC Assessment and Medical Source Statements**

Plaintiff also argues that the ALJ erred in selectively rejecting portions of the opinion of state agency review psychiatrist Dr. Tzetzo. (Dkt. 12-1 at 16). The Court has reviewed the ALJ's RFC assessment, and, for the following reasons, finds that the ALJ committed reversible error.

Under the Commissioner's own rules, if the ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling 96-8p (1996 WL 374184, at *7). "While the ALJ is not obligated to reconcile explicitly every conflicting shred of medical testimony, [he] cannot simply selectively choose evidence in the record that supports [his] conclusions." *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (internal quotation marks omitted); *Maenza v. Colvin*, No. 14-CV-6596, 2016 WL 1247210, at *12 (W.D.N.Y. Mar. 24, 2016) ("It is beyond dispute that an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions." (internal quotation marks omitted)).

Plaintiff argues that the ALJ afforded "great weight" to Dr. Tzetzo's opinion, but then rejected, without explanation, her finding that Plaintiff would be able to handle only "brief and superficial" contact with coworkers and the public. (Dkt. 12-1 at 16; Dkt. 5 at 29, 85). The Court agrees that the ALJ's RFC assessment conflicts with Dr. Tzetzo's

opinion and that the ALJ failed to explain his decision to reject some of Dr. Tzetzo's findings.

The ALJ concluded that Plaintiff is able to tolerate "up to frequent interaction with supervisors and occasional interaction with co-workers and the general public." (Dkt. 5 at 25). The ALJ's finding that Plaintiff can tolerate "occasional interaction with co-workers and the general public" (*id.*) is not inconsistent with Dr. Tzetzo's findings that Plaintiff's "ability to deal with coworkers and the public would be somewhat reduced, but adequate, to handle brief and superficial contact" (*id.* at 85), and that Plaintiff was "moderately limited" in her ability to interact appropriately with the general public and maintain socially appropriate behavior (*id.* at 87-88). However, the ALJ offered no explanation for his conclusion that Plaintiff can tolerate "up to frequent interaction with supervisors." (*Id.*).

Moreover, Dr. Tztezo also noted that Plaintiff's "ability to accept instructions and respond appropriately to criticism from supervisors" was moderately limited. (*Id.* at 88). Especially in light of the fact that Dr. Tzetzo specifically commented on the limits of Plaintiff's ability to interact with supervisors, the ALJ's conclusion that Plaintiff is able to tolerate "up to frequent interaction with supervisors" is inconsistent with Dr. Tzetzo's findings, which the ALJ apparently afforded "great weight." Thus, the Court finds that the ALJ committed reversible error in rejecting that portion of Dr. Tzetzo's opinion without explanation. Accordingly, remand is required on this additional basis.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings (Dkt. 12) is granted in part, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is denied, and this matter

is remanded to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: July 31, 2018
  Rochester, New York